UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

DAWGS & DINGOES, LLC,   )
          )
   Plaintiff,    )
          )
v.          )   CV422-176
          )
THE CITY OF POOLER,   )
GEORGIA,      )
          )
   Defendant.   )

## ORDER

Before the Court is Plaintiff Dawgs & Dingoes, LLC's (sometimes, "D&D") Motion to Compel and for Sanctions. Doc. 99. Defendant City of Pooler ("the City") responded, doc. 114, and Plaintiff has filed a reply, doc. 128. The Motion is now ripe for review. Plaintiff has also filed a Consent Motion to Amend Plaintiff's Response to Defendant's Motion for Summary Judgment. Doc. 132.

## Background

This matter arises out of the City's alleged refusal to issue a site development permit for a mixed-use development called Pooler Promenade. *See generally* doc. 18 (Amended Complaint). Plaintiff

1

alleges that the City's denial of its site plan application, in conjunction with the City's amendments to the applicable ordinances, constitutes a regulatory taking in violation of the Fifth Amendment, *id.* at 27-28, a substantive due process violation, *id.* at 29-30, and an infringement of vested property rights under Georgia law, *id.* at 30-31.

On November 9, 2023, Plaintiff served its First Interrogatories and Requests for Production of Documents ("RPD") on Defendant. Doc. 99 at 2. At issue in this dispute are Defendant's responses to Plaintiff's Interrogatories 3 and 4 and Plaintiff's Requests for Production of Documents 2 and 3. *Id.* at 2-3. Plaintiff's Interrogatory No. 3 reads:

> Identify all documents, including correspondence, known to or believed by [the City] to exist containing information concerning the Plaintiff's application for and [the City's] denial of site development permits for cooler [sic] Promenade, including information concerning:
>
> a. The development and adoption of an "overlay district for Highway 80 corridor work," as referenced in A section 6.2 of the 2016 Comprehensive Plan;
>
> b. The development and adoption of the "Main Street overlay district" in 2017;
>
> c. The amendment of the "Main Street Overlay district" in 2019;
>
> d. Opposition to the Plaintiff's project;
>
> e. Meetings and correspondence between Plaintiff and [the City] concerning the Plaintiff's project prior to Plaintiff's

>   submission of its "Remainder Site Plan" after the City's elections in November of 2019;
>
> f. Review of all site plan applications and attendant plans submitted by Plaintiff to [the City] for review and approval; [and]
>
> g. Plaintiff's request for access to Wilkes Street for ingress and/or egress from the Oral Surgery Center and [the City's] denial of same.

Doc. 99-2 at 7-8. Plaintiff's Interrogatory 4 requests that Defendant "[i]dentify each statement (oral, written or in any way recorded) that you have obtained from any person or source concerning the claims in this action, including the name, address, home telephone number and business telephone number of the person who gave the statement and the date the statement was obtained." *Id*. at 8. Plaintiff's RPDs 2 and 3 request all documents responsive to Interrogatories 3 and 4, respectively. Doc. 99-3 at 3-4. Defendant responded to RPD 2, tied to the substance of Plaintiff's Interrogatory 3, as follows:

> Defendant objects on the ground that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving objection, Defendant refers Plaintiff to the documents being produced herewith. In compiling those documents, Defendant has caused a search to be made for Plaintiff's corporate name as well as the terms "overlay district," and "Wilkes Street" within the emails of all City employees who, to the City's knowledge, have likely participated in discussions related to the topics outlined in Interrogatory Number 3, dating back to 2015. Additionally, the Defendant

has extended this search to include the minutes of all City Council meetings. At this time, the Defendant is not aware of any alternative methods that would more efficiently identify the documents in question.

Doc. 99-3 at 3-4.   The City provided correspondence from four City employees in its initial production: Kimberly Dyer, Philip Claxon, Robert Byrd, and Rebecca Benton.   Doc. 99 at 4.

Later, during fact witness depositions, Plaintiff's counsel became concerned that the City had not produced all documents responsive to its document requests.   Doc. 99 at 4.   Plaintiff's counsel noted that both former Mayor and City Councilwoman Rebecca Benton and former City Manager Robbie Byrd testified that a City employee, Maribeth Lindler, had involved herself in the events underlying Plaintiff's causes of action by sharing information about Plaintiff's proposed development with the larger community, sparking pushback.   *Id.* at 4-5.   Plaintiff's counsel observed that the City's discovery responses included no mention of Lindler, prompting him to send Defendant a letter on September 18, 2024 expressing a fear that the City's lack of production regarding Lindler might be the "tip of the iceberg" as it related to information that the City had failed to produce.   Doc. 99-6 at 1, 4.   D&D's letter specifically expressed concern that the City's response to Interrogatory 4 and RPD 3

4

omitted Ms. Lindler and other individuals named in the City's discovery responses and D&D's belief that there were "far many more individuals" likely to have correspondence responsive to D&D Interrogatory 3. Doc. 99-6 at 3-4. The letter makes no reference to the substantive completeness of the email correspondence initially produced from Kimberly Dyer, Philip Claxon, Robert Byrd, and Rebecca Benton. *Id.*

According to Plaintiff's Motion, in response to the September 18, 2024, the City agreed to conduct a more comprehensive search of its electronically stored information ("ESI") and supplement its document production. Doc. 99 at 5. On November 26, 2024, the City provided its supplemental document production, which primarily consisted of emails involving City employees and elected officials. Doc. 99 at 5; *see also* doc. 99-7 at 3. The supplemental production was the result of "the City's IT department conduct[ing] a thorough search of email accounts for elected officials and senior administrative staff whose accounts *had not been searched during the initial production.*" Doc. 99-7 at 3 (emphasis added). The City represented that the following search terms were queried: "dawgs & dingoes," "dawgs and dingoes," "overlay district," "Pooler Promenade," and "Wilkes Street." *Id.* To summarize, the City applied a

5

similar search as that used to gather its initial production, with the addition of the term "Pooler Promenade," to a larger swath of employees who had not been included in the initial production.

While Plaintiff asserts that the substance of Defendant's supplemental production was "mostly insignificant," it learned that third-party engineering firm, Integrated Science and Engineering ("ISE"), was responsible for reviewing the site plan that Plaintiff had submitted to the City. Doc. 99 at 6, n. 4. At some point, D&D raised the possibility that ISE may hold additional documents not included in the City's original or supplemental production. Doc. 114 at 7. However, at no point during the discovery schedule did any party move to seek any relief as it relates to third-party discovery from ISE.[1] *See generally* docket. In the parties' post-discovery status report, filed May 16, 2025, the parties indicated that discovery was not complete and that Plaintiff intended to serve additional third-party requests for document production. Doc. 70 at 1. The Court then held an informal conference with the parties on May 29, 2025, and ultimately granted Plaintiff's oral

---

[1] The deadline to complete written discovery in this matter expired on December 1, 2023. Doc. 49. The Court has extended the discovery schedule multiple times, *see* docs. 53, 60, 62, & 64, but has never extended the deadline to complete written discovery that was established in the initial scheduling order. *See generally* docket.

motion to serve a single out-of-time subpoena upon ISE. Doc. 73 at 1-2. Plaintiff failed to serve ISE within the time allotted and moved for an extension of time to effectuate service of its subpoena. Doc. 76. This Court granted Plaintiff's motion. Doc. 78. Defendant did not oppose either of Plaintiff's ISE-related motions. *See generally* docket.

ISE responded to D&D's subpoena by producing roughly 325 pages of documents ("ISE Documents") that were not produced by the City. Doc. 99 at 7. The ISE Documents include a number of emails between ISE and the City's staff, particularly Kimberly Dyer, the City's Zoning Administrator whose correspondences were part of the City's initial production. *Id.* The ISE Documents frequently include the term "Pooler Promenade." *Id.* The ISE Documents include a "clean letter" from ISE to Kimberly Dyer regarding D&D's application dated April 9, 2019. *Id.* Plaintiff defines a "clean letter" as "a letter written by a civil engineer to, in this instance, a municipality following the engineer's review of a site plan application (such as Plaintiff's) that indicates it has no markups, review comments, unmet requirements, etc. and that the site plan has complied with all ordinances and regulations codified by the municipality." *Id.* at 7, n. 5. The parties vigorously dispute the

significance of the ISE Documents, particularly the "clean letter," but Plaintiff believes they are "very relevant to, and potentially dispositive of" its claims.  Doc. 99 at 8.

Plaintiff now moves to sanction the City for its discovery conduct leading to the omission of the ISE Documents from its discovery responses.  Doc. 99 at 10-18.  Plaintiff seeks sanctions under Rules 26(g) and 37(c) of the Federal Rules of Civil Procedure and under the Court's inherent powers.

<u>Analysis</u>

### 1. Federal Rule of Civil Procedure 26(g)

Pursuant to Rule 26(g)(1) of the Federal Rules of Civil Procedure, discovery responses must be signed by an attorney or party and "[b]y signing, an attorney or party certifies that to the best of the person's knowledge, information and belief formed after a reasonable inquiry," that its response is "(i) consistent with [the Federal Rules of Civil Procedure] and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law; (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and

8

(iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action." Fed. R. Civ. P. 26(g)(1)(B). "If a certification violates [Rule 26(g)] without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both.  The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation." Fed. R. Civ. P. 26(g)(3).

"The comments to subsection (g)(1) clarify that Rule 26(g) broadly 'imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37.'" *In re Delta/AirTran Baggage Fee Antitrust Litigation*, 846 F. Supp. 2d 1335, 1350 (N.D. Ga. 2012) (quoting Fed. R. Civ. P. 26(g) advisory committee's note).  Under Rule 26(g), the signing attorney "certifies that the lawyer has made a reasonable effort to assure that the client has provided all the information and documents available to him that are responsive to the discovery demand."  Fed. R. Civ. P. 26(g)

advisory committee's note. "Ultimately, what is reasonable is a matter for the court to decide on the totality of the circumstances." *Id.*

Plaintiff contends that, since the City has admitted that the ISE "clean letter" and other documents were in its possession and were not produced in response to Plaintiff's RPDs, the City failed to make a "reasonable inquiry" as required by Rule 26(g). Doc. 99 at 11. D&D asserts that a reasonable inquiry would have revealed ISE's "clean letter" and all other responsive documents to its RPDs.[2] *Id.* With the benefit of hindsight, Plaintiff observes that all of the documents it has strained to acquire would have been revealed had the City applied the search term "Pooler Promenade" in its initial discovery queries. *Id.* Notably, the City's original Response to RPD 4 listed the search terms used, and there is nothing to indicate D&D challenged those search terms when the response was originally served or otherwise urged the City to search its representatives' email accounts using the additional term "Pooler Promenade." *See* doc. 99-3 at 3-4. D&D presents no argument to suggest

---

[2] Plaintiff alleges that the City's failure to produce the ISE Documents "in response to Plaintiff's requests for production," violates Rule 26(g), but does not identify which specific response to which specific request for production violates the Rule. Given the factual recitation provided by the parties, the Court interprets this as a challenge to the City's response to Plaintiff's Request for Production No. 2.

that the City's counsel unreasonably failed to investigate the facts and circumstances responsive to Plaintiff's RPDs, instead assuming in conclusory fashion that, because a different search would have uncovered the discovery at issue—a search that Plaintiff did not explicitly request—Defendant's counsel must have unreasonably discharged his duty to ensure the completeness of the City's discovery responses.[3]  Doc. 99 at 11.

The City provides a detailed factual background of this issue but does not specifically acknowledge D&D's arguments involving Rule 26(g). *See generally* doc. 114.  Nevertheless, under the facts presented, the Court does not discern a violation of Rule 26(g).  The City's initial response to D&D's RPD 2 included correspondence from four city employees and officials, including Kimberly Dyer, that were responsive to a search including Plaintiff's corporate name, "Wilkes Street," and "overlay district." Doc. 99-3 at 3-4.  Neither party includes any discussion referencing why or how those four employees and officials were selected

---

[3] Plaintiff's Motion does not make clear what provision of Rule 26(g) the City's discovery responses allegedly violate.  *See generally* doc. 99.  However, based on the record, there does not appear to be any conduct that violates any of the specific provisions of the Rule.

(or why others were not) or why or how those terms were selected (or why others were not). *See generally* docs. 99 & 114.

What is clear: when presented with Plaintiff's concern that other City employees may have been improperly omitted from the City's response, the City performed a similar search on the email accounts for other City employees that had not already been searched in the initial production. *See* doc. 99-7 at 3. This supplemental search included an additional search term, "Pooler Promenade." *Id.* Defendant's counsel's communication clearly outlines the methodology underlying the search: "the City's IT department conduct[ed] a thorough search of email accounts for elected officials and senior administrative staff whose accounts had not been searched during the initial production," and clearly identified the search terms used. *Id.* Although, with hindsight, it appears that had the term "Pooler Promenade" been applied to Kimberly Dyer's correspondences, the majority of the ISE Documents would have been produced, Defendant never suggested that the search was applied to Dyer's emails. It further appears that Plaintiff never requested that the updated search terms be applied to the initial batch of City employees. Therefore, the Court cannot conclude that the City's

12

counsel failed to make a "reasonable inquiry" under Rule 26(g). Instead, it appears that counsel responded to Plaintiff's concerns with the original document production by conducting an additional search and laid out the terms and scope of that search to Plaintiff. D&D's request for sanctions pursuant to Rule 26(g) is, therefore, **DENIED**. Doc. 99, in part.

2. **Federal Rule of Civil Procedure 37(c)**

"If a party fails to provide information as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard: (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)." Fed. R. Civ. P. 37(c)(1). Rule 26(a) governs a party's initial disclosures, not a party's discovery responses, but Rule 26(e) governs a party's ongoing obligation

13

to supplement its discovery responses, so the Court will focus its 37(c) analysis on the City's supplemental discovery responses.

Rule 26(e) addresses the City's obligations to supplement disclosures and discovery responses, including its responses to D&D's interrogatories and document requests.  It states, in pertinent part:

(1) In General. A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:

(A)    in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or

(B) As ordered by the court.

Fed. R. Civ. P. 26(e)(1).  Thus, the City was "required to supplement its discovery responses in a timely manner when it learned that its previous document production was incomplete . . . ." *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 846 F. Supp. 2d at 1355.  Failure to supplement in a timely manner can result in sanctions under Rule 37(c)(1).  *Id.*  "The party seeking sanctions under Rule 37 bears the burden of establishing that an opposing party failed to comply with Rule 26 or a discovery

14

order." *DeepGulf Inc. v. Moszkowski*, 333 F.R.D. 249, 253 (N.D. Fla. 2019).

Plaintiff's Motion makes no effort to show that Defendant's conduct violated Rule 26(e). *See generally* doc. 99. Instead, D&D appears to assume that the City's failure to produce the ISE Documents represents a per se violation of Rule 26. *Id.* at 14-16. It is uncontested that the City complied with D&D's request to supplement its production as it relates to additional employees not included in its original production. *Compare* doc. 99-6 *with* doc. 99-7. At no point does Plaintiff suggest that the City failed to "timely" supplement its discovery responses. *See generally id.* In the absence of any showing that the City violated Rule 26(e), Plaintiff's request for sanctions pursuant to Rule 37(c) is **DENIED**. Doc. 99, in part.

Additionally, even if the Court were to assume the City violated Rule 26(e) by searching only the emails of the newly identified city representatives in response to Plaintiff's discovery letter, the City has demonstrated that any failure was substantially justified. Fed. R. Civ. P. 37(c)(1); *Caviness v. Holland*, 2011 WL 13160390, at \*2 (S.D. Ga. Mar. 17, 2011) (quoting *Hewitt v. Liberty Mut. Grp., Inc.*, 268 F.R.D. 681, 683 (M.D. Fla. 2010)). As discussed above, in response to Plaintiff's concerns

15

that additional city representatives may have responsive communications or documents, the City identified "elected officials and senior administrative staff whose accounts had not been searched during the initial production," and searched their email accounts for five search terms, which included the newly-added "Pooler Promenade." Doc. 99-7 at 3. Because Plaintiff's concerns focused on the existence of additional City representatives, and not the scope of the search terms applied to the original City representatives, the City's supplemental production, which focused directly on Plaintiff's concerns, was substantially justified.

### 3. Court's Inherent Power

A court may impose sanctions for litigation misconduct under its inherent power. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1306 (11th Cir. 2009) (citations omitted). This power "must be exercised with restraint and discretion." *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 764 (1980) (citations omitted). "The key to unlocking a court's inherent power is a finding of bad faith." *Eagle Hosp.*, 561 F.3d

16

at 1306 (quotation omitted). Plaintiff has not demonstrated that the City acted in bad faith.

D&D argues that the City should be sanctioned for intentionally withholding the ISE documents, a conclusion it reaches based on the City's admission that it withheld the ISE documents and the City's representation that it used the term "Pooler Promenade" to search for responsive documents. Doc. 99 at 16. First, the City has made no such admission concerning withholding evidence, although it has conceded that it failed to produce the documents at issue. Second, Plaintiff misstates the scope of the City's use of the search term "Pooler Promenade." The City was quite clear in its communications with D&D that the search queries applied to supplement its responses were only applied to "email accounts for elected officials and senior administrative staff whose accounts had not been searched during the initial production."[4] Doc. 99-7 at 3. Additionally, Defendant has set forth

---

4 D&D has attached a screenshot of the Dropbox folder containing the City's supplemental production. Doc. 128-1. That screenshot includes a folder titled "Benton." *Id.* D&D asserts that this is proof that the City applied the search term "Pooler Promenade" to at least some of the initially-produced City employees (of which Benton is one). Doc. 128 at 15. While D&D asserts that a "cursory review" of the documents in the Benton production confirms this to be the case, the Court is presented with no evidence that any of the original employees had the term "Pooler Promenade" applied to their correspondences, just a screenshot of names in the City's

17

additional evidence to support the contention that its failure to produce the ISE Documents was not in bad faith.  Most relevantly, on two separate occasions the City consented to Plaintiff's issuance of a subpoena to ISE although the deadline for completing discovery had already expired.  *See* doc. 64 (Fourth Amended Scheduling Order); doc. 73; doc. 78.  If the City were intentionally withholding these documents, as D&D implies throughout its Motion and Reply, it is unlikely that it would consent to an out-of-time subpoena upon the organization most likely to hold the documents at issue.  Under the facts alleged, the Court cannot conclude that the City acted in bad faith in providing and supplementing its discovery responses.  Plaintiff's request for sanctions under the Court's inherent powers is **DENIED**.  Doc. 99, in part.

### Leave to Amend

At the end of its Motion, Plaintiff requests leave to amend its Amended Complaint to state a procedural due process claims "for the reasons set forth in Plaintiff's Motion for Summary Judgment."  Doc. 99 at 18.  Plaintiff's Motion for Summary Judgment does not present a

---

supplemental production.  A screenshot of a webpage showing electronic file folders is not sufficient to overcome Defendant's assertion that it did not apply the term "Pooler Promenade" to the four originally searched employees, and is certainly not sufficient to justify the Court exercising its inherent power to sanction a party.

robust argument for leave to amend, instead stating that "[Plaintiff] intends to move to file an amended complaint based on this newly discovered and highly material evidence . . . ." Doc. 100 at 26, n. 9. D&D never filed a standalone motion to amend its Amended Complaint. *See generally* docket.

"A motion for leave to amend should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment." *Long v. Satz*, 181 F.3d 1275, 1279 (11th Cir. 1999). First, it is questionable whether Plaintiff's request may be properly considered as a "motion for leave to amend" when it is presented as a bookend to a discovery sanctions motion. Second, to the extent it represents such a motion, it does not include a copy of the proposed amendment and only includes a cursory description of the proposed amendment. Doc. 99 at 18. Because the request is not made as a Motion, *see* Fed. R. Civ. P. 7(b), and because it does not meet the procedural requirements of a Motion under Rule 15, *see* doc. 99 at 18, the Court will not construe it as a Motion. D&D

19

may file a standalone motion to amend if it believes it can make the requisite showing.

### Amended Response to Defendant's Motion for Summary Judgment

Plaintiff moves, with Defendant's consent, for leave to amend its Response to Defendant's Motion for Summary Judgment, doc. 119. Doc. 132. Plaintiff represents that this amendment is necessary to include images that were inadvertently omitted due to technological errors and that its response otherwise "will not change in any form." *Id.* at 2-3. For good cause shown, Plaintiff's Motion is **GRANTED**. Doc. 132. Plaintiff is **DIRECTED** to file its Amended Response no later than February 20, 2026.

### Conclusion

Plaintiff's request for sanctions under Rule 26(g), Rule 37(c), and the Court's inherent powers is **DENIED**. Doc. 99. Plaintiff's Consent Motion to Amend Plaintiff's Response to Defendant's Motion for Summary Judgment is **GRANTED**. Doc. 132.

**SO ORDERED**, this 13th day of February, 2026.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

20